UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:24-cv-00135-MR

| | |
|---|---|
| SETH REED SCROGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| J. COMPTON, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, see 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 1]. Plaintiff is proceeding in forma pauperis. [Docs. 2, 6].

## I. BACKGROUND

Pro se Plaintiff Seth Reed Scroggs ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina.[1] [Doc. 1]. Plaintiff filed this action on May 28, 2024, pursuant to 42 U.S.C. § 1983, against Defendants J. Compton

---

[1] In his Complaint, Plaintiff lists his address as Central Prison in Raleigh, North Carolina. [See Doc. 1 at 2, 10]. The return address on the envelope enclosing the Complaint, however, was for Marion, not Central Prison. According to the North Carolina Department of Adult Correction website, Plaintiff is currently housed at Marion. While litigants have the duty to notify the Court of any address changes, the Court will instruct the Clerk to update the docket to reflect Plaintiff's current address under the circumstances here.

and R.A. Crow, both identified as Officers with the Mooresville Police Department ("MPD"), in their individual and official capacities.[2] [Id. at 3]. Plaintiff alleges as follows.[3]

On February 11, 2022, at approximately 3:30 p.m., Plaintiff was standing in the open passenger door area of a Ford Escape parked outside of Academy Sports in Mooresville, North Carolina. [Id. at 5; Doc. 1-1 at 5]. Academy Sports had recently been subject to a string of robberies. [Doc. 1-1 at 11]. After observing Plaintiff looking through items in the front passenger area for some time, and then later noticing a female companion in the driver's seat looking through items in that area, Defendant Crow, who was in an unmarked police car, ran the tag on the Ford Escape, which returned as being registered for a GMC Envoy. [Id. at 5]. Defendant Crow then

---

[2] In docketing the Complaint, the Clerk, apparently out of an abundance of caution, listed the MPD as a Defendant in this matter. It does not appear, however, that Plaintiff intended to name the MPD as a Defendant. Although he wrote "Mooresville Police Department" above each Defendants' name in the Complaint's caption, he did not list the MPD as a Defendant in the designated area in the body of the Complaint. [See Doc. 1 at 1, 3-4]. To the extent Plaintiff intended to name the MPD as a Defendant, a police department is not municipal entity subject to Monell liability, as discussed infra, under North Carolina law in any event. See Smith v. Munday, 848 F.3d 248, 256-57 (4th Cir. 2017) (citing Ostwalt v. Charlotte-Mecklenburg Bd. Of Educ., 614 F.Supp.2d 603, 607 (W.D.N.C. 2008)); Wright v. Town of Zebulon, 688 S.E.2d 786, 789 (N.C. App. 2010). The Court, therefore, will instruct the Clerk to terminate this Defendant.

[3] Without explanation, Plaintiff included with his Complaint what appear to be Defendants' narrative statements regarding Plaintiff's arrest. [See Doc. 1-1 at 5, 7-13]. For the purpose of initial review, the Court will consider these statements part of Plaintiff's factual allegations to the extent they do not conflict with Plaintiff's handwritten allegations.

2

Case 5:24-cv-00135-MR   Document 7   Filed 06/17/24   Page 2 of 13

continued to surveil the vehicle and its occupants. [Id.]. After 30 to 40 minutes of Plaintiff and his companion searching through materials in the car, Defendant Crow called Defendant Compton to assist him in speaking to the occupants. [Id. at 7]. When Defendant Compton arrived, both Defendants pulled their vehicles to parking spots, so as to not block in the Escape. [Id.]. Defendant Crow walked toward the passenger side where Plaintiff was standing, and Defendant Compton approached the driver's side. [Id.]. The female driver, who was identified as Candice Swanson, told Defendant Compton that they were just doing their makeup. [Id. at 11]. As Defendant Crow approached, he shut the passenger rear door because it was blocking him from walking up to the Plaintiff, who was still standing in the open passenger door area. Plaintiff is approximately 6'2" and 180 pounds. [Id. at 7].

After closing the rear door and walking closer to the Plaintiff, Defendant Crow observed a broken yellow glass meth pipe on the center console and an airtight, watertight black box sitting on the front passenger seat, which Defendant Crow recognized as a possible vessel to store drugs. Defendant Crow then noticed the outline of a handgun concealed under Plaintiff's shirt at his hip area. [Id.]. At this time, Defendant Crow introduced himself and told Plaintiff he was not under arrest, but that Crow was going to detain him

3

and hold onto his firearm. Defendant Crow then removed a black S&W snub nose revolver from Plaintiff's holster on his right hip. Defendant Crow secured the revolver in his back pocket and asked Plaintiff to place his hands on the roof of the vehicle so Defendant Crow could frisk him for additional weapons. After Plaintiff put his hands on the roof of the vehicle, Defendant Crow began checking the rest of Plaintiff's waistband and pants pockets. [Id. at 8]. Defendant Crow conducted a "good search," even lifting Plaintiff's pant legs, and ordered Plaintiff to put his hands behind his back. [Id. at 1]. Plaintiff turned to say "for what" knowing that he was being detained. As Plaintiff turned, Defendant Crow "started to grab [Plaintiff] forcefully so [Plaintiff] did try and run." [Id.]. One of the Defendants "wrapped around [Plaintiff]" and "surplexed [*sic*]" him. Plaintiff landed on his head and "was about knocked out from the impact of head hitting road." Plaintiff's head rolled under his body and he "could of easily been placed in handcuffs at the time." [Id. at 2]. Plaintiff felt a knee go into [his] side with so much impact it shattered [his] hip severly [*sic*]." Defendants assaulted him "even though he was not resisting" and that Defendant Compton "[dove] on and assault[ed] [Plaintiff] with closed fists" when Plaintiff was "laying 'prone.'"[4] [Doc. 1 at 6]. Plaintiff was yelling

---

[4] According to Defendant Crow's statement attached to Plaintiff's Complaint, he punched Plaintiff twice with a closed fist in the waist area of his back after Plaintiff refused Crow's repeated commands to give Defendants his other hand. [Doc. 1-1 at 9]. Defendant Crow

4

"ok" and trying to pull his hand from underneath his body to be handcuffed, "but [he] couldn't" with Defendants' combined weight of 500 pounds on him At that time, he got hit in his eye once. [Doc. 1-1 at 2].

While this was all happening, Plaintiff was yelling, "babe get the stuff." [Doc. 1-1 at 9]. After Plaintiff was secured in handcuffs, he told Defendants that his hip was hurt. [Id. at 9]. Plaintiff was searched. [Id.]. Defendants then made Plaintiff "get in the back of the police car and [slung his] legs in to close the door when [Plaintiff] said [he] couldn't lift [his] legs." [Doc. 1 at 5; Doc. 1-1 at 3].

After Plaintiff was detained in the police vehicle, Defendant Crow spoke with Ms. Swanson, who told Crow that Plaintiff "always does this type of thing when approached by Officers." Swanson also told Defendant Crow that there was a second firearm in the rear cargo area of the vehicle and that Plaintiff was a convicted felon. Defendant Crow located a loaded magazine-fed rifle in the rear cargo area and the block box he had seen on the passenger seat. [Id. at 9-10]. The box contained 15 balloons of heroin weighing approximately 17 grams. Defendant Crow continued to search the vehicle and found a second black box, which contained multiple items of

---

wrote that he used the closed fist punches because Plaintiff was refusing to comply with commands to give Defendants his hand and Defendant Crow had already removed one firearm from Plaintiff's waist area. [Id.].

5

Case 5:24-cv-00135-MR   Document 7   Filed 06/17/24   Page 5 of 13

packaging material with heroin residue.  [Id. at 10].

While Defendant Crow was searching the Escape, EMS arrived.  [Id.].  Defendants "made [Plaintiff] walk [several steps] on [a] broken hip to [the] ambulance even though [he] told them [he] was in pain and couldn't."  [Doc. 1 at 5; Doc. 1-1 at 3].  Plaintiff was taken to Lake Norman Regional Medical Center's Emergency Room.  [Doc. 1-1 at 10].  Another officer rode with the Plaintiff while Defendants remained on the scene to assist with the investigation.  [Id. at 13; see id. at 10].  At the hospital, "him and his officer buddies" laughed at Plaintiff as he struggled to get from the wheelchair to the bed for x-rays.  [Id. at 3].

Given the significant time it would take to search and process the vehicle, Defendant Crow decided to transport the vehicle to the Police Department and asked Swanson for a phone number to make arrangements to return the vehicle after the search was complete.  [Doc. 1-1 at 10].  After completing the search wherein Defendant Crow found additional drugs and drug paraphernalia, as well as a loaded 12-gauge shotgun magazine, he called the number Swanson had provided.  [Id. at 10-11].  The number, however, did not belong to her.  Defendant Crow, therefore, secured the vehicle in the rear, fenced area of the Police Department.  [Id. at 11].

Defendant Crow obtained an arrest warrant and then learned from Defendant Compton that Plaintiff had been transferred to a "CMCC" in Charlotte, North Carolina, for his injuries. [Id.].

Plaintiff claims that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures and his Fourteenth Amendment due process rights. [Id. at 5]. Plaintiff also "want[s] to sue" for "being laughed at cause [he] couldn't get up" at the hospital. [Doc. 1-1 at 3]. Plaintiff also asks the Court to advise him whether he is still able to retrieve his property from the vehicle. [Doc. 1-1 at 4]. Plaintiff alleges having suffered various physical injuries. [Id. at 7]. He seeks monetary relief only. [Id. at 8].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint

raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). Plaintiff claims his rights under the Fourth and Fourteenth Amendments were violated by Defendants' conduct.

### A. Fourth Amendment

"The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of 'seizures effectuated by excessive force.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (quoting Schultz v. Braga,

8

455 F.3d 470, 476 (4th Cir. 2006)). In this regard, the inquiry is whether a reasonable officer would have determined that the degree of force used was justified by the threat presented, an objective inquiry "requir[ing] careful attention to the facts and circumstances in each particular case," including "'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or other,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Here, taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's Fourth Amendment claim against Defendants in their individual capacities based on their alleged use of excessive force in arresting Plaintiff is not clearly frivolous and survives initial review as to only the alleged force used after Plaintiff was taken to the ground and had allegedly abandoned his resistance. To the extent Plaintiff bases his Fourth Amendment claim on the use of force in taking Plaintiff to the ground, Plaintiff has failed to state a claim for relief, as Plaintiff's own allegations show that the degree of force used was reasonable under the circumstances.

## B. Fourteenth Amendment[5]

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). To state such a claim, a plaintiff must allege that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836, 114 S.Ct. 1970 (1994)). It remains, however,

---

[5] Plaintiff fails to allege how he contends his Fourteenth Amendment due process rights were violated. [See Doc. 1]. Broadly construing Plaintiff's Complaint and in the absence of any other possible due process claims, the Court will consider whether Plaintiff has stated a Fourteenth Amendment claim based on Defendants' alleged indifference to his hip injury.

10

Case 5:24-cv-00135-MR   Document 7   Filed 06/17/24   Page 10 of 13

insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee."  Id. at 611-12.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a claim based on Defendants' allegedly swinging his leg into the patrol vehicle or forcing him to walk "several steps" to the ambulance.  While Plaintiff alleges having informed Defendants of his hip pain, Plaintiff has not alleged that Defendants acted in the face of "any objectively high risk of harm" to the Plaintiff and they could not have possibly known at that time that Plaintiff's hip was broken.  Moreover, EMS promptly arrived to treat Plaintiff's injuries and allowed Plaintiff to walk "several steps" to the ambulance before transporting Plaintiff to the hospital.  The Court, therefore, will dismiss this claim.

### C. Plaintiff's Other Claims

The Court will dismiss Plaintiff's official capacity claims.  Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (1985) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658,

690, n. 55 (1978)[6]). As noted, under North Carolina law, police departments are not municipal entities subject to Monell liability. See Munday, 848 F.3d at 256-57 (citation omitted); Wright, 688 S.E.2d at 789. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants.

The Court will also dismiss Plaintiff's purported claim based on officers laughing at him at the hospital. Whether a detainee or free citizen, Plaintiff has no constitutional right to be free from verbal harassment. See Henslee v. Lewis, 153 Fed. App'x 178, 180 (4th Cir. 2005) (holding detainee's allegations of verbal abuse and harassment, without physical contact, fail to state a cognizable claim under § 1983). Finally, the Court notes that Plaintiff should direct any questions regarding the return of his property to local law enforcement officials or to the state court charged with his prosecution, as appropriate. This Court has no interest or authority in that matter as alleged.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915A in accordance with the terms of this Order.

---

[6] Under Monell, the municipal entity is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Id., 436 U.S. at 691.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Fourth Amendment excessive force claim against Defendants in their individual capacities passes initial review in accordance with the terms of this Order. All remaining claims, including Plaintiff's official capacity claims, are **DISMISSED** for Plaintiff's failure to state a claim for relief. 28 U.S.C. §§ 1915(e) and 1915A.

The Clerk is respectfully instructed to mail two (2) blank summonses to Plaintiff to fill out and identify the Defendants, and then return the summonses to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to timely effectuate service on the Defendants. When the Court receives the summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon the Defendants.

The Clerk is also instructed to terminate the Mooresville Police Department as a Defendant in this matter and to update the docket to reflect Plaintiff's current address as Marion Correctional Institution.

**IT IS SO ORDERED**.

Signed: June 14, 2024

Martin Reidinger
Chief United States District Judge